UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA FULLER,

    *Plaintiff*,       CASE NO. 13-CV-11994

v.       DISTRICT JUDGE MARK A. GOLDSMITH
    MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability and for Disability Insurance Benefits ("DIB").[2] This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff Sheila Fuller was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 30.) Plaintiff's employment includes work as a laborer for an automotive company for 15 years. (Tr. at 144.) Plaintiff filed the instant claim on October 28, 2009, alleging that she became unable to work on December 18, 2008. (Tr. at 114.) The claims were denied at the initial administrative stage. (Tr. at 59.) In denying Plaintiff's claims, the Commissioner considered muscle/ligament disorder and fascia, and disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*) On December 22, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Craig Peterson, who considered the application for benefits *de novo*. (Tr. at 9-57.) In a decision dated January 17, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this decision on January 26, 2012. (Tr. at 5-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 5, 2013, when, after review of additional exhibits[3] (Tr. at 320-33,) the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]I note that Plaintiff's application is labeled one for Supplemental Security Income ("SSI") benefits, but the parties and the ALJ consistently treated the application as one for DIB benefits.

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

at 1-4.) On May 16, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since December 18, 2008, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's right knee degenerative joint disease, status post surgery; left hip bursitis; lumbar spine degenerative disc disease; cervical spine degenerative disc disease; and obesity were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 18.) The ALJ also found that Plaintiff was 46 years old on the alleged onset date and thus met the classification of a "younger" individual, which is defined as age 45-49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19-20.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated for knee pain by Kim Eastman, M.D., of River Valley Orthopedics from 2005 to 2010. (Tr. at 191-272, 283-97, 319.)

On February 2, 2006, a bone scan of Plaintiff's pelvis and hips was "normal." (Tr. at 222.)

On June 27, 2006, an MRI of Plaintiff's left hip showed a "tear of the labrum anteriorly"

and a "small subchondryl cyst formed in the interior acetabulum." (Tr. at 218-19.) On December 27, 2006, Plaintiff underwent a left hip arthrocentesis with pain injection. (Tr. at 216-17.)

An MRI of Plaintiff's right knee taken on July 28, 2008, showed that a "partial tear of the anterior cruciate ligament demonstrated on the previous exam has healed" but that a "truncation of the free margin of a portion of the posterior horn of the lateral meniscus seen on one sagittal image [] would suggest a small focal radial tear" and that the "medial meniscus has a normal appearance." (Tr. at 215.)

Plaintiff underwent an arthroscopic lateral meniscetomy and removal of loose bodies of her right knee on March 6, 2009. (Tr. at 211-14, 243-46.)

On July 15, 2009, Dr. Eastman noted that Plaintiff was also treated with "[c]onservative measures" for left hip bursitis and "[s]ome mild lumbar spondylosis." (Tr. at 203.)

On October 9, 2009, Dr. Eastman noted that Plaintiff "has pretty good motion" in her knee but also had "some crepitation patellofemoral" and that her "[l]igaments [were] intact." (Tr. at 227, 260.) On that same day, Dr. Eastman indicated that Plaintiff could return to work under the following permanent restrictions: no lifting over 10 pounds, no climbing, squatting, crawling, or repetitive bending at knee, no stairs, no twisting of the knee, and no prolonged standing or walking. (Tr. at 193.) These same restrictions were also found in a Disability Claims Form completed by Dr. Eastman on the same date. (Tr. at 232-33.)

Plaintiff participated in physical therapy at Advent Physical Therapy in 2010. (Tr. at 284-87.) Upon discharge in June 2010, it was noted that Plaintiff "has made good gains" and "[s]ince she is independent in her HEP, the patient and I have discussed her trying to exercise with her HEP on her own . . . ." (Tr. at 298.)

8

Plaintiff was also treated by John Vanschagen, M.D., from 2009 to 2011. (Tr. at 300-18.)

A Residual Physical Capacity ("RFC") Assessment was completed on March 2, 2010, by Thomas Valle. (Tr. at 273-80.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 274.) The assessment also concluded that Plaintiff should only occasionally climb ramps, stairs, ladders, ropes, scaffolds, kneel and crawl, but can frequently balance, stoop, and crouch. (Tr. at 275.) There were no manipulative, visual, communicative or environmental limitations established. (Tr. at 276-77.)

At the administrative hearing, Plaintiff testified that she lives by herself and has been drawing her pension from General Motors since January of 2010 in the amount of $2,600 per month before taxes. (Tr. at 30-31.) Plaintiff has also been receiving Worker's Compensation benefits in the amount of $671 per week since March 2009. (Tr. at 31.) Plaintiff also indicated that she has a driver's license and that no doctor has restricted her ability to drive. (*Id.*) Plaintiff testified that she is 5'3" tall and weighs about 185 pounds, which is down from her filing weight of 213 pounds. (Tr. at 33.) Plaintiff described her former job, indicating that part of her job was safety training which involved teaching a one- or two-day class and testing the employees on the specific safety requirements of their jobs. (Tr. at 36.) When asked by the ALJ whether she could still do that job, Plaintiff responded, "Yes, some of it I could." (*Id.*) When further asked what part she could not do, Plaintiff responded, "[t]he part with putting on the harness and climbing up and teaching them how to hook from one point and having a three-point connection and hooking and unhooking." (*Id.*) Plaintiff indicated that she could "stand or sit because I have a desk" in her job as a safety trainer. (Tr. at 37.) Plaintiff stated that she can "stand 20 to 30 minutes if I shift - -

9

basically shifting my weight." (Tr. at 43.) Plaintiff also stated that she "can walk about 30 minutes" and "sit down for 20 to 30 minutes, but I'm shifting from side to side." (*Id.*) Plaintiff testified that she has no problems with doing her own personal care, that she does dishes, does laundry in her basement after traversing the 20 stairs to get there, grocery shops every two weeks, handles her own finances, "[s]ometimes" mows the lawn with a self-propelled walking mower, and enjoys building computers. (Tr. at 43-46.) When asked whether Plaintiff could do that kind of job for eight hours a day, five days a week, Plaintiff responded, "Yes." (Tr. at 46.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> can lift and carry up to twenty pounds occasionally, stand or walk up to two hours out of an eight-hour work day, sit up to six hours of an eight-hour work day with normal breaks, can occasionally stair and ramp climb, but no ropes, ladders or scaffolds, can occasionally stoop, kneel, crouch, but never crawl. There are no manipulative, visual, environmental or communication limitation[s]. No limitations regarding concentration, persistence and pace. There are no social deficits.

(Tr. at 54.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 23,000 unskilled, sedentary jobs available in Michigan, such as the 2,400 assembler jobs, 700 inspector jobs, and 1,300 machine operator tender jobs. (Tr. at 54-55.) The ALJ then asked the VE to change the hypothetical to require limitations to lifting only 10 pounds occasionally, no repetitive squatting or kneeling, no twisting of the right knee and a sit/stand option at will, the VE responded that there would be no reduction in the availability of the jobs. (Tr. at 55.) The ALJ asked whether the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the VE responded that it was. (Tr. at 56.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-18.)

Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833;

*Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the ALJ "erred as a matter of law by failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical, that did not accurately portray Ms. Fuller's impairments." (Doc. 9 at 7-11.) Plaintiff contends that she testified that "she was not able to stand or walk for prolonged periods of time due to her knee pain" and that she has "restrictions [] as follows: no repetitive squatting, kneeling, no lifting greater than 10 pounds, no stairs, no twisting of the knee, and no prolonged standing or walking." (Doc. 9 at 9.) I first note that the ALJ's RFC finding that Plaintiff could perform only a limited range of sedentary work is not inconsistent with Plaintiff's testimony or the restrictions imposed by Dr. Eastman. (Tr. at 15.) The ALJ's hypothetical required limitations to lifting only 10 pounds occasionally, no repetitive squatting or kneeling, no twisting of the right knee and a sit/stand option at will. (Tr. at 55.) The only difference between Dr. Eastman's restrictions and the ALJ's hypothetical is that the ALJ assumed a person who could "occasionally stair" while Dr. Eastman indicated that Plaintiff should not use stairs at all. (Tr. at 54.) I suggest that this difference is insignificant in light of all the limitations contained in the hypothetical and the jobs described by the VE. Even if any differences between Dr. Eastman's restrictions and the ALJ's findings were significant, I suggest that they are supported by substantial evidence.

The objective medical evidence of record shows that Plaintiff had only minor issues with her left hip (Tr. at 216-22) and that Plaintiff's right knee issues were largely resolved with surgery. (Tr. at 211-14, 243-46.) Dr. Eastman also noted that Plaintiff had "pretty good motion" in her knee (Tr. at 227, 260) and had made progress in physical therapy that could be continued with home exercises. (Tr. at 298.)

I also note that Plaintiff's treatment after knee surgery has consisted of some medication and physical therapy. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I further suggest that the hypothetical posed to the VE was in harmony with the objective record medical evidence and Plaintiff's own testimony that she could perform her past job except for tasks requiring climbing (Tr. at 36), that she could perform a computer rebuilding job for eight hours a day, five days a week (Tr. at 46), that she can stand 20 to 30 minutes if she shifts her weight (Tr. at 43), that she "can walk about 30 minutes" and "sit down for 20 to 30 minutes" if she is "shifting from side to side" (*id.*), that she has no problems with doing her own personal care, that she does laundry in her basement after traversing the 20 stairs to get there, that she grocery shops every two weeks, does dishes, handles her own finances, "[s]ometimes" mows the lawn with a self-propelled walking mower, and enjoys building computers. (Tr. at 43-46.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                     s/ Charles E Binder
                                                                     CHARLES E. BINDER
Dated: March 20, 2014                                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 20, 2014                               By     s/Patricia T. Morris
                                                                           Law Clerk to Magistrate Judge Binder